[No. 8612. Department One. February 3, 1910.]

THE STATE OF WASHINGTON, *on the Relation of Godfrey Chealander, Appellant,* v. HARRY W. CARROLL, *Comptroller and Ex-Officio Clerk of the City of Seattle, Respondent.*[1]

ELECTIONS — CANDIDATE — ELIGIBILITY — POWERS OF COMPTROLLER. Under a charter limiting the right to file declarations of candidacy to those persons "who shall be eligible" for the office sought, the city comptroller has power to inquire into the eligibility of candidates and refuse to certify the same if ineligible, although no statute or charter provision expressly authorizes such inquiry.

MUNICIPAL CORPORATIONS—OFFICERS—DISQUALIFICATIONS. Under a charter disqualifying any person appointed to the office of civil service commissioner from holding any other office during the term for which he was appointed, a person appointed to the office at a time when he was disqualified to act as commissioner, who accepted the office and continued to hold it after his disqualification was removed, cannot claim that he was not "appointed" to the office or a *de jure* officer; as the appointment is a continuing one, and he is disqualified from holding any other office during the term for which he was appointed.

OFFICERS—DISQUALIFICATIONS—OFFICIAL BONDS—FAILING TO GIVE —EFFECT. The failure of an officer to give a bond, which was a ministerial act for the security of the government and not a condition precedent to his authority to act, does not render him merely a *de facto* officer, but he is a *de jure* officer under a defeasible title, and subject to the disqualification of holding other offices attached to the office.

[1]Reported in 106 Pac. 748.

Appeal from a judgment of the superior court for King county, Yakey, J., entered January 31, 1910, after a hearing before the court, dismissing proceedings in mandamus to compel a city comptroller to place the name of a candidate upon the official ballot for nomination for the office of city councilman.    Affirmed.

*Robert C. Saunders* and *Israel Nelson,* for relator.
*Scott Calhoun,* for respondent.

FULLERTON, J.—On December 10, 1909, the relator, Godfrey Chealander, filed in the office of the city comptroller of the city of Seattle a written declaration of candidacy, in accordance with the direct primary law, in which he declared himself a candidate for nomination to the office of member of the city council of the city of Seattle for the Tenth ward thereof, to be made at the primary election to be held on February 8, 1910, and requested that his name be printed on the official primary ballot as a candidate of the republican party for that office.    The application was regular and sufficient on its face and was accompanied with the statutory fee required of candidates for the office named. The city comptroller, whose duty it is to certify the nominations and direct the printing of the official ballots, refused to recognize the relator as a candidate for the office sought by him, and ordered and directed that, in making up and printing the official ballot, the relator's name be not included thereon, giving as his reason therefor that the relator was not eligible to the office to which he aspired.    The relator, on learning of this action of the comptroller, began mandamus proceedings in the superior court of King county to compel the comptroller to recognize him as a candidate and to place his name on the ballot.

In response to the writ, the comptroller appeared, whereupon the following facts were stipulated as constituting the grounds for the comptroller's action, viz:    That the relator was on the ——— day of ———, 1908, appointed to the

office of civil service commissioner in and for the city of
Seattle, for the term ending December 31, 1910; that he
did not then, nor thereafter, give and file the bond required
by the city charter before entering upon the duties of such
office, but did, within ten days after his appointment, enter
upon such duties and did perform the same from such time
until on or about December 1, 1909, when he resigned the
office and his resignation was accepted; that the relator be-
came a resident of the city of Seattle in the month of August,
1905, and was never a resident thereof before such time.
That the city charter of the city of Seattle provides that
all elective and appointive officers of the city shall be citizens
of the United States and of the city of Seattle and electors
therein, and shall have been residents of the city of Seattle
for at least four years prior to the time of their election or
appointment, and that "no person elected or appointed to"
the office of civil service commissioner of the city "and who
has accepted the said office and entered upon the duties there-
of, shall . . . be eligible to any other office in the city dur-
ing the term for which he was so elected or appointed." On
the hearing the trial judge ruled that the relator was not
entitled to the writ sought, and ordered the proceedings dis-
missed. The relator prosecutes this appeal.

It is the relator's first contention that the city comptroller
is without warrant to inquire into his eligibility for office;
that neither the city charter not the general law confers
upon the comptroller that power, and that in consequence
when he filed with the comptroller a declaration of candidacy
in due form, accompanied with the statutory fee, the comp-
troller had no other duty than to certify his name as one
entitled to be printed on the official ballot; and, he argues,
that since the comptroller had no authority to inquire into
his eligibility, the courts likewise have no authority to make
the inquiry, and will compel the comptroller to properly
certify his candidacy so that his name may appear on
such official ballot.

It is true there is no statute or charter provision of the city of Seattle directing and authorizing the city comptroller to inquire into the eligibility of candidates for office who file the statutory declaration with him, and he would perhaps be guilty of no dereliction of duty if he directed the printing of the names of all such persons on the ballot, but we do not think it follows therefrom that he is precluded from making the inquiry in all cases.   The primary law by express terms limits the right to file declarations of candidacy to those persons only "who shall be eligible" to the office sought.   This, while it may not require inquiry on the comptroller's part into the eligibility of candidates, plainly suggests such inquiry, and, when it is remembered that the comptroller has duties to perform in relation to the expenditure of public moneys, indicates that the comptroller has sufficient discretion to compel a candidate whose eligibility is doubtful to resort to his proofs.   The argument that this puts too much power into the hands of a ministerial officer is not conclusive.   True, the power may be abused by that officer, but so may the filing of declarations of candidacy be abused.   Let us suppose that the women of the relator's ward should become convinced that they were eligible to the office of member of the city council of the city of Seattle, and should tender to the comptroller their declarations of candidacy; must the comptroller file the declarations and place the declarants' names upon the official ballot?   He would know that the very charter under which he acts and under which the declarants sought election declared them ineligible.   He would know also that his duties as comptroller require him to conserve the expenditures of the public money; yet, if the relator's theory be correct, he must, without questioning their rights, certify such declarants as candidates and publish their names upon the election ballots.   The law does not require the doing of vain and useless things, even when the doing of them incurs no greater hardship than the mere time and labor expended

in the doing of the things. But where, as here, the thing involves the useless expenditure of public money, the rule has almost the form of a mandate. This view of the law works no hardship upon the candidate. If the comptroller rules incorrectly, the means for correcting him are open and can be made available without loss of right on the part of the candidate.

The authorities cited by the relator seem to us not to support his contention in its entirety. The case principally relied upon is *People ex rel. Eaton v. District Court*, 18 Colo. 26, 31 Pac. 339. In that case two sets of nominations, both by conventions purporting to have been held by the same political party, each in apparent conformity to law, were certified to the secretary of state for filing. Protests against the regularity of the one convention by the other were made to the secretary and he decided between them. The defeated contestants thereupon brought a proceeding in mandate to compel their recognition as the regular party nominees. The court decided that neither the secretary nor the courts had power to determine which of the contestants had the better right, and compelled the secretary to certify to both sets of nominees. The contest in this case, it will be observed, was over the right to the party name. It involved no question of eligibility on the part of the several nominees, but merely which of two several sets of nominees were entitled to call themselves by the name of the party each purported to represent. This presents no question which directly affects the state, and since the law did not impose the duty of deciding upon the secretary, the courts might well hold that he had no such power. But the case at bar presents a question in which the state is interested. The relator is seeking to compel the state to recognize him as a candidate for a particular office when, if the comptroller be correct, he is not eligible to that office and cannot become a *de jure* officer if elected. These principles, it would seem, sufficiently distinguish the cases.

Cases more nearly in point and supporting the comptroller can, we believe, be found in our own state. The legislature has required for the due organization of corporations that their articles be filed with the secretary of state. It has also provided against the assumption by one corporation of the name of another existing corporation; has provided for the organization of a certain class of corporations under a distinctive name, and forbidden others not of that class to adopt the distinctive name; and has provided against the adoption by corporations of certain functions not belonging to corporations of its class. The secretary of state has assumed to inquire, when articles of incorporation have been presented to him for filing, whether the articles violated any of these several prohibitions. It is agreed that no express authority to make the inquiry has been conferred upon him by law, but this court has uniformly upheld his right to make the inquiry. Where he has determined against the right so to file, we have inquired into the soundness of his holding and have refused to run a mandate against him in all cases when his objection has appeared to us to be just. *State ex rel. Osborne, Tremper & Co. v. Nichols*, 38 Wash. 309, 80 Pac. 462; *State ex rel. Gorman v. Nichols*, 40 Wash. 437, 82 Pac. 741; *State ex rel. Amalgamated Republic Mines Co. v. Nichols*, 47 Wash. 117, 91 Pac. 632; *State ex rel. Baker River and Shuiksan R. Co. v. Nichols*, 51 Wash. 619, 99 Pac. 876. While the ground for these decisions is stated to be that the courts will not require the secretary to do vain and useless acts, it must be conceded that, in their last analysis, they rest on the ground that the secretary is vested with discretion to determine whether the articles tendered comply with the law.

The relator further contends that he is in fact eligible to the office which he seeks. From the recitals of fact we have heretofore made it will be known that the comptroller based his conclusion of ineligibility on the fact that the charter of the city of Seattle provides that no person appointed to

the office of civil service commissioner of the city of Seattle
and who accepts the same shall be eligible to any other
office in the city during the term for which he was so ap-
pointed, and that the relator was appointed to and accepted
this office for a term ending December 31, 1910. The re-
lator admits that he was so appointed to the office named
and performed the duties thereof until a day certain when
he resigned, but contends that he cannot be said to have
been legally appointed or to have legally accepted the of-
fice, because of the fact that he was ineligible to the appoint-
ment at the time it was made, as he had not then been a
resident of the city of Seattle for four years next previous
to his appointment, and the further fact that he did not
file the bond by law required of him before entering upon
the duties of the office. But these contentions are not
tenable. Aside from the fact that the law never looks
with favor upon a claimant who must rely upon a past
dereliction in order to maintain a present right, the de-
duction itself is not sound. An appointment to an office
is continuing in its nature; that is to say, it is in the nature
of an offer, and is good until it is expressly or impliedly with-
drawn. Hence, in this case, even though the relator were
not qualified to accept the office tendered him when first
made, he accepted it as far as he was able, and continued in
the performance of its duties until after his disqualifica-
tion was removed. If, therefore, the appointment did not
legally take effect when first made and accepted, it became
legally effective when relator continued in the performance of
the duties of the office after his disqualification was removed.

So, also, the failure to give a bond does not render an
officer duly elected or appointed a *de facto* officer. He is
a *de jure* officer holding by a defeasible title. *Foot v. Stiles,*
57 N. Y. 399. The giving of a bond is a mere ministerial
act for the security of the government, and not a condition
precedent to the officer's authority to act, unless especially
made so by statute. *Glavey v. United States,* 182 U. S.

595. The courts generally hold that, even though the statute expressly provides that, upon a failure to give a bond within the time prescribed, the office shall be deemed vacant and may be filled by appointment, the default is a ground for forfeiture only, not forfeiture *ipso facto*, and that if, notwithstanding such default, the state or other power sees fit to excuse the delinquency by granting the officer his commission, the defects of his title are cured, and it is a title *de jure* having relation back to the time of his election or appointment. *People ex rel. Bennett v. Benfield*, 80 Mich. 265, 45 N. W. 135. On any view of the case, therefore, the relator was an officer *de jure* under his appointment as a civil service commissioner, and is disqualified from accepting or holding any other office during the term for which he was appointed. It follows that he was disqualified for the office of member of the city council of the city of Seattle, and that the judgment of the trial court should be affirmed. It is so ordered.

RUDKIN, C. J., and MORRIS, J., concur.

CHADWICK, J. (concurring)—I concur in the result but not with all of the reasoning of Judge Fullerton. He says:

"While the ground for these decisions is stated to be that the courts will not require the secretary to do vain and useless acts, it must be conceded that, in their last analysis, they rest on the ground that the secretary is vested with discretion to determine whether the articles tendered comply with the law."

With this I cannot agree, and at the risk of being charged with a disposition to be hypercritical, I shall briefly state my views.

If a solution of the present problem required us to hold that the comptroller had an absolute discretion in filing or refusing to file a declaration of candidacy which is sufficient in form, I would not concur in the result in this case. While it may seem that he has, or that the secretary of state had

in the cases cited, it is not so.   The officer may arbitrarily refuse.   If a party conceives himself to be aggrieved, he may seek his remedy, and the officer becomes only a nominal factor in the case.   The remedy is allowed not on the theory that the officer has or has not a discretion, but because our statute has so modified the common law procedure of mandamus that it has become a hearing upon the merits and not upon a technical question of statutory duty.   In *State ex rel. Brown v. McQuade,* 36 Wash. 579, 79 Pac. 207, this court said, in speaking of the statutory mandamus:

"Formerly mandamus was regarded as a prerogative writ, issued not as of right, but at the pleasure of the sovereign, or state, in his or its name, as an attribute of sovereignty, but with us the writ is not in any sense a prerogative writ, or a writ to be issued at the discretion of the court.   It is a procedure under the Code, and any person who has a cause that calls for its invocation has the same right to sue out the writ as he has to commence a civil action to redress a private wrong.   As we said in *State ex rel. Race v. Cranney,* 30 Wash. 594, 71 Pac. 50, a proceeding in mandamus, 'is a judicial investigation, the object of which is the determination of civil rights, the same as in any ordinary proceeding; not only the determination of rights, but their determination in such a way as to culminate in an effective judgment.'   In our practice, mandamus is nothing more than one of the forms of procedure provided for the enforcement of rights and the redress of wrongs.   The procedure has in it all the elements of a civil action.   The facts stated in the affidavit for the writ may be controverted by a return, raising both questions of law and fact.   The return likewise may be controverted, and a trial had on the issues of fact thus raised, either before the court, a jury, or a referee, as the court may order.   Judgment can be entered on the verdict or findings not only directing the issuance of a peremptory mandate, but for damages and costs on which execution may issue.   The statute has been so framed as to afford complete relief in all cases falling within its scope and purport, whether these be cases of wilful violations of recognized rights, or denials, made in good faith, that the rights contended for exist."

In all of the cases cited in the majority opinion this court has inquired into, and made its decision rest upon, some fact, so that, in the last analysis, the right to refuse a filing for noncompliance with some form or requirement of the law or the right to pass upon the eligibility of a candidate does not rest in the discretion of the officer, but is determined as a question of fact and law by the court under the civil action which, for the want of a better term, we have called "mandamus." The intent of our special proceeding (Laws 1895, ch. 65; Rem. & Bal. Code, § 999 *et seq.*), was to make mandamus a real remedy and afford final relief without resort to its adjutant at common law—injunction. Its provisions are sufficiently set out in the quotation which we have made from the case of *State ex rel. Brown v. McQuade*, *supra*. So, in this case, the writ is refused, not because the comptroller has discretion to determine the fact, but because he has refused to perform a duty, and we have gone beyond the record as he had it before him and weighed the facts upon which the relator rests his claim, and found them wanting in legal worth. It is unnecessary to discuss the function of the common law writ, and the modifications made by our statute. These are subjects which may be pursued at the leisure of those interested therein.

GOSE, J., concurs with CHADWICK, J.