[No. 27258. *En Banc.* August 5, 1938.]

THE STATE OF WASHINGTON, *on the Relation of George F. McAulay, Plaintiff*, v. BELLE REEVES, *as Secretary of State, Respondent.*[1]

*McAulay, Stroud & Thurston, O. R. Schumann, Sandvig & Walters*, and *Arthur E. Carr*, for relator.

*The Attorney General, John E. Belcher* and *L. C. Brodbeck, Assistants*, for respondent.

[1]Reported in 81 P. (2d) 860.

ROBINSON, J.—This is an application for a writ of mandate, directed to the secretary of state, requiring her to accept and file relator's declaration of candidacy for the office of judge of the supreme court.

The facts are undisputed. The relator is a senator of the state of Washington and, as such, was a member of the legislature during the 1937 session. His legislative term will not expire until January, 1941. He has never held judicial office, at least in this state. On July 21, 1938, he presented his declaration of candidacy, in form as prescribed by the statute for the office of judge of the supreme court, position No. 3, the term of which begins on the second Monday of January, 1939, and continues for six years. The declaration was accompanied by the fee required by law.

The constitution in Art. II, § 13, provides:

"No member of the legislature during the term for which he is elected shall be appointed or elected to any civil office in the state which shall have been created, or the emoluments of which shall have been increased, during the term for which he was elected."

Chapter 229, Laws of 1937, p. 1172 (Rem. Rev. Stat. (Sup.), § 11054-1 [P. C. § 4418-201] et seq.), enacted by the legislature while the relator was a member of that body, provides (§ 1) that judges of the supreme and superior courts who have served eighteen years in the aggregate, or, having served ten years in the aggregate, shall have attained the age of seventy years, or who (§ 2), having served ten years in the aggregate, shall become incapacitated, may retire on half pay.

By § 5 of the act, there was established "The Judges' Retirement Fund." In the next section, it was provided that 2½ per cent of the monthly salary of each judge should be deducted by the state treasurer, the sum thus accruing to be matched by a like amount from the state. Provision was made (§ 9) for the state's con-

tribution to the fund for the biennium ending March 31, 1939, by an appropriation of ten thousand dollars.

When the relator presented his declaration of candidacy and tendered the statutory fee for the filing thereof, the secretary of state, being cognizant of the constitutional provision hereinbefore quoted, and of the passage of chapter 229, Laws of 1937, and of the fact that the relator was a member of the legislature at the time, and that the term for which he was elected will not expire until January, 1941, asserted that she had the right to determine his eligibility for the six-year term on the supreme court beginning in January, 1939, and having arrived at a decision that he was legally ineligible to that office, refused to accept and file his declaration of candidacy. This action followed.

It may be noted, in a preliminary way, that the secretary of state thus assumed to decide, and did decide, a most complex and difficult question, or, rather, a great many difficult questions, at least one of which, it may be plausibly argued, cannot definitely be answered without resorting to the opinion of experts. In order to make the decision, she was, of course, required to interpret the constitutional provision; and it is susceptible, or at least parts of it are susceptible, of several interpretations. She was also required to interpret chapter 229, Laws of 1937, a seven-page statute. Without attempting to interpret this statute on our own account, it may be said that it would at least *prima facie* appear that, under its terms, no one who had not formerly been a judge in this state could possibly receive any half pay until he had served at least ten years, and then only if he had attained the age of at least sixty when elected or have become incapacitated after ten years of service. If he were fifty-two, or younger, he could not possibly, except by reason of becoming incapacitated after ten years of service, receive any re-

tirement pay or privilege until he had been twice re-elected and served a full eighteen years. The office for which the relator sought to file is a six-year office.

What effect is to be given to the word "increased" in the constitutional provision? The act plainly decreases the salary theretofore paid by 2½ per cent. If the relator were elected to the office for which he sought to file, he would receive for his six years' service $1,050 less than he would have received had the law not been passed. Is it not, perhaps, necessary, in order to determine whether the emoluments of the office have been "increased," to show that the value of the retirement provisions is greater than the salary reductions made by the act? If so, the opinion of expert actuaries would be necessary to determine that.

The fact that such questions, and more of the same description, are necessarily inherent in the larger question as to whether or not the relator is eligible, at once raises a doubt as to whether the secretary of state had the power or right to pass upon the relator's eligibility, for it is apparent, in doing so, she assumed to exercise judicial power.

In the case of *State ex rel. Chealander v. Carroll*, 57 Wash. 202, 106 Pac. 748, a case decided by one of the departments of this court and in which two of the five judges concurred only in the result, it appeared that the charter of the city of Seattle provided that no person who had been elected or appointed to the office of civil service commissioner and had entered upon the duties thereof should be "eligible to any other office in the city during the term for which he was so elected or appointed." Chealander had been appointed civil service commissioner for a term ending December 1, 1910, and entered upon the duties of his office. Early in 1910, he attempted to file a declaration of candidacy for the office of a member of the city council, subject to the

February 8th primaries. The comptroller refused to file his declaration. He applied for a writ of mandamus, seeking to compel the comptroller to recognize him as a candidate and place his name on the ballot. The proceedings were dismissed in the lower court, and the matter was brought to this court on appeal.

This court said, in substance, that, while there is no statute or charter provision of the city of Seattle authorizing the city comptroller to inquire into the eligibility of candidates for office who are required to file the statutory declaration with him, *"we do not think it follows therefrom that he is precluded from making the inquiry in all cases"* (Italics ours); that is to say, the general rule is that he is precluded, in the absence of such an authorization; but there are exceptions in certain cases. The court then proceeded to indicate the nature of such cases:

"Let us suppose that the women of the relator's ward should become convinced that they were eligible to the office of member of the city council of the city of Seattle, and should tender to the comptroller their declarations of candidacy; must the comptroller file the declarations and place the declarants' names upon the official ballot? He would know that the very charter under which he acts and under which the declarants sought election declared them ineligible. He would know also that his duties as comptroller require him to conserve the expenditures of the public money; yet, if the relator's theory be correct, he must, without questioning their rights, certify such declarants as candidates and publish their names upon the election ballots. The law does not require the doing of vain and useless things, even when the doing of them incurs no greater hardship than the mere time and labor expended in the doing of the things."

The court further cited cases in which the right of the secretary of state to refuse to file corporate articles had been upheld where the name of the proposed

corporation was the same as an existing corporation, or where the articles were in some other respect plainly defective on their face.

All the illustrations and cases cited in the opinion plainly show that the exceptions to the general rule recognized by the court are instances where the question of eligibility is so simple and plain that, to use an expression commonly used in another connection, "reasonable men cannot differ," and where it would be apparent to anyone that the filing would be "a vain and useless thing."

No statute has been cited authorizing the secretary of state to inquire into the eligibility of candidates for office. Our first statute requiring filing of declarations of candidacy was chapter 209, Laws of 1907, p. 457. The 1915 legislature passed an act (chapter 52, p. 174) which required, among other things, that candidates file a declaration of candidacy in which they were compelled to swear that they were eligible to the office to which they aspired. That act was vetoed by a popular referendum in 1916, and the old form of declaration, contained in chapter 209, Laws of 1907, restored, in which the candidate was not required to certify to his eligibility, under oath or otherwise, nor is he now required to do so. The statute now applicable was passed in 1933, being chapter 95 of the laws of that year, p. 403, and is found in Rem. Rev. Stat. (Sup.), § 5180. It reads as follows:

"The name of no candidate shall be printed upon the official ballot used at any primary election unless at least thirty (30) and not more than sixty (60) days prior to such primary, a declaration of candidacy shall have been filed by him, as provided in this act, in the following form:

"I, ................................, declare upon honor that I reside at No. ............... street, ...................... (city or town of) ..........................., county of ..............................., state of Washington, and am a qualified voter therein, and a member of ...................................

party, that I hereby declare myself a candidate for nomination to the office of ........................................., to be made at the primary election to be held on the .............. day of ................., and hereby request that my name be printed upon the official primary ballot as provided by law as a candidate of the ................. ................. party, and I accompany herewith the sum of ................. dollars, the fee required by law of me for becoming such candidate.

"Subscribed this .............. day of ........................................., 19.............

........................................ ........................................

"*Provided,* That no person who desires to become a candidate for the office of supreme or superior court judge or justice of the peace shall certify his party affiliations."

Certainly, there is nothing in the above statute limiting the right to file a declaration of candidacy or suggesting that the officer whose duty it is to receive the filing may refuse to file it, if it be in proper form and accompanied by the proper fee. Nor, as far as we are advised, has the right been limited by any judicial decision other than the *Chealander* case.

We do not think the rule laid down in that case should be further extended. In fact, to hold that the respondent in the instant case had the right to make a determination of the relator's eligibility for the office for which he desired to file would be something more than a mere extension of the narrow rule of the *Chealander* case. It would amount to a judicial decision that it is the right of every filing officer to determine the eligibility of candidates as to whose eligibility a colorable question can be raised, and to determine it according to that officer's individual construction of constitutional provisions and statutes and according to his individual findings of fact, with the added danger that, in times of stress, his determination might be influenced by his prejudices or by partisan considerations. We find nothing in our statutes or in our decisions indicating that such powers have been conferred upon

such officers. The right to exercise a power so sovereign in its nature as the judicial power cannot be successfully spelled out by mere inference or conferred by judicial decision.

Since, in our opinion, the relator was denied a substantial right, and this, whether or not he is, in fact, eligible to the office for which he desires to become a candidate—upon which question we express no opinion—he is entitled to the relief prayed for.

Let the writ issue.

HOLCOMB, BEALS, and GERAGHTY, JJ., concur.

STEINERT, C. J., and SIMPSON, J., took no part.

BLAKE, J. (dissenting)—As I read it, the case of *State ex rel. Chealander v. Carroll*, 57 Wash. 202, 106 Pac. 748, is authority justifying the refusal of the secretary of state to accept relator's declaration of candidacy for the office of judge of the supreme court. As I read the court's opinion and the concurring opinion of Judge Chadwick, it was unanimously held that where, upon undisputed facts, it appears that one presents a declaration of candidacy for an office to which he is ineligible, the officer designated by law to receive such declaration may refuse to file the same, and the court will not, by mandamus, compel him to file it.

Coming to the merits of the instant case, I think, under the undisputed facts, relator is ineligible to the office of judge the supreme court. He was and is a member of the legislature which passed chapter 229, Laws of 1937, providing retirement pay for judges of the supreme and superior courts. Article 2, § 13, of the constitution is plain and unambiguous. A member of the legislature, during the term for which he is elected, is ineligible to any office the emoluments of which have been increased by the legislature of which he is a member. That the judges retirement act in-

creases the emoluments of the office of judge of the supreme and superior courts, seems to me not open to debate. Of emoluments, the supreme court of Minnesota, in *State ex rel. Benson v. Schmahl*, 125 Minn. 104, 145 N. W. 794, said:

"We think it clear that the word emoluments in the Constitution does not refer to the fixed salary alone, but includes such fees and compensation as the incumbent of an office is by law entitled to receive because he holds such office and performs some service required of the occupant thereof. The Century Dictionary defines emoluments as: 'The profits arising from the office or employment; that which is received as compensation for services, or which is annexed to the possession of office as salary, fees and perquisites,' and to this definition Bouvier adds: 'It imports any perquisite, advantage, profit or gain arising from the possession of an office.'"

I dissent.

MAIN, J. concurs with BLAKE, J.

MILLARD, J. (dissenting)—The principle enunciated in *State ex rel. Chealander v. Carroll*, 57 Wash. 202, 106 Pac. 748, that the officer whose duty it is to receive a declaration of candidacy, has the right to determine the eligibility of such declarant for the office for which he desires to be a candidate, is unsound, as the authority to determine the eligibility of the declarant is a judicial power which has not been conferred upon or vested in such filing officers. Whether subsequently we, without written opinion, disregarded the rule announced in the case cited is unimportant. That authority, which a majority (five) of this court refuse to overrule, is not distinguishable from the case at bar. It is controlling, and under the rule of *stare decisis* I must follow same.

This cause was heard by the court *En Banc*, with seven judges sitting, two judges not participating. As

there is not a constitutional majority, either to grant or deny the application, the writ must be denied.

The one upon whom is imposed the burden of sustaining the affirmative in this court cannot be granted relief in the absence of a constitutional majority on either side of the question presented. *Bloss v. Equitable Life Assurance Society,* 176 Wash. 1, 28 P. (2d) 303, 33 P. (2d) 375.

### ON REHEARING.

[*En Banc.* August 9, 1938.]

PER CURIAM.—Upon the filing of the foregoing opinions, the respective parties to the cause jointly petitioned that the matter be set down for reargument. The petition was granted, as required by the provisions of Rem. Rev. Stat., § 11 [P. C. § 8656], and a reargument was had on August 9th. As a result of the more mature consideration of the matter thus afforded, five members of the court (Judges Main and Blake dissenting) have reached the conclusion that *State ex rel. Chealander v. Carroll,* 57 Wash. 202, 106 Pac. 748, should be overruled. With that modification, the first of the foregoing opinions is adopted as the opinion of the court.

The writ will accordingly issue.

STEINERT, C. J., and SIMPSON, J., took no part.