[No. 28232.  *En Banc.*  October 15, 1940.]

THE STATE OF WASHINGTON, *on the Relation of Henry P. Huff et al., Plaintiff*, v. BELLE REEVES, *as Secretary of State, Respondent.*[1]

[1]Reported in 106 P. (2d) 729.

*John Caughlan* and *J. O. Davies,* for relators.

*The Attorney General, John E. Belcher* and *Fred E. Lewis, Assistants,* for respondent.

BLAKE, C. J.—Chapter 94, Laws of 1937, p. 383 (Rem. Rev. Stat. (Sup.), §§ 5167 to 5170-7 [P. C. §§ 2157-51 to 2157-60], inclusive), provides "for an exclusive method by which minor parties may nominate candidates for public office." Briefly, the act provides that, upon notice given as prescribed in the act, twenty-five or more registered voters may assemble on primary election day, hold a convention, adopt a party name and principles, and nominate candidates for public office. The act requires that the nominations be certified to the secretary of state in a certain manner, and that the certificate of nomination "shall designate, *in not more than five words, the party or principle* which such convention represents . . ." (Italics ours.)

Upon receipt of the certificate, the secretary of state is required under § 6 of the act, p. 384 (Rem. Rev. Stat. (Sup.), § 5170-2 [P. C. § 2157-56]), to

" . . . check from the records the required signatures thereto to ascertain if the signers are registered voters and whether said signers voted at the primary election held on the same day as said convention."

(A prerequisite to the right of a registered voter to participate in such a convention is that he shall not vote at the primary election.) The same section contains the following provision:

"If the secretary of state finds that such certificate is defective *or does not comply with this law* he shall refuse to file the same and any declarations of candidacy of candidates nominated by such convention." (Italics ours.)

Pursuant to the act, notice was published that a convention would be held on September 10, 1940, at 2232 2nd Avenue, Seattle, by the "Communist Party, U. S. A." The notice contained the following declaration of party principles:

"To keep America at peace; to win economic security and prosperity for the people of the State of Washington and the American people; to protect and maintain the Bill of Rights and the civil liberties of the people."

Pursuant to the notice, a convention of more than twenty-five registered voters assembled and nominated candidates for presidential electors, president, vice-president, governor, lieutenant governor, congressman for the third congressional district, and county commissioner for the central district of King county. The nominations were duly certified to the secretary of state as required by § 5, p. 383 (Rem. Rev. Stat. (Sup.), § 5170-1 [P. C. § 2157-55]), of the act. The nominations for president and vice-president were filed in compliance also with the requirements of Laws of 1935, chapter 20, p. 45, § 1 (Rem. Rev. Stat. (Sup.), § 5138-1 [P. C. § 2221-21]). The secretary of state refused to file the certificate of nominations and such declarations of candidacy as were offered by nominees of the convention in compliance with § 7, p. 384 (Rem. Rev. Stat. (Sup.), § 5170-3 [P. C. § 2157-57]), chapter 94, Laws of 1937.

Thereupon the relators, Huff, Brockway, and Ellison, nominees of the convention for the offices of congressman, governor, and lieutenant governor, respectively, made this application for a writ of mandamus to compel the secretary of state to certify to the proper county officers, as candidates of the Communist party, U. S. A., the names of Earl Browder for president, James W. Ford for vice-president, Henry P. Huff for representative to Congress from the third congres-

sional district, John Brockway for governor, and Victor M. Ellison for lieutenant governor. An alternative writ issued, to which the secretary of state made return justifying her refusal to accept the certificate of nominations and to certify the party and its nominees for places on the ballot at the election to be held November 5, 1940, on the grounds: (1) That the certificate of nominations is defective in that it contains a designation in more than five words of the party or principle which "such convention represents"; (2) that the certificate

" . . . contains, she believes, a declaration of principle at variance with the avowed principles contained in the Constitution and by-laws of the Communist Party U. S. A., . . . which principle is a matter of common knowledge and judicial determination; to-wit: the overthrow of the government of the United States by force and violence";

(3) that she refused to accept the certificate of nomination because, "with [her] full knowledge of the avowed principles of the Communist party, U. S. A.," it would be contrary to the public policy of the United States and the state of Washington and a violation of her oath of office; (4) that it would be "a vain and useless thing" to accept the filings because "said candidates could not take the oath of office to which they aspire, except by fraud."

To substantiate her findings and to justify her refusal to accept the proffered certificate and declarations of candidacy, the secretary of state quotes extensively from a book "which was purchased at the Communist Book Store, 703 Olive Street, Seattle, Washington," and attaches photostatic copies of the contents of the book to her return.

Upon all except the first ground for her refusal to file the certificate of nomination, we think it is

apparent that the secretary of state has exceeded any power conferred upon her by the statute. Her duties are explicitly defined in § 6 of the act. The limit of her power to refuse to file a certificate of nomination is contained in the following sentence: "If the secretary of state finds that *such certificate is defective or does not comply with this law* he shall refuse to file the same . . ." (Italics ours.)

It is admitted that the procedure followed by the relators and the other electors who assembled in convention on September 10th complied with Laws of 1937, chapter 94, in every respect with the possible exception that the party designation or declared principles consisted of more than five words. Unless this objection to the certificate is well taken, the secretary of state was bound, under the statute, to accept the certificate of nomination and certify the names of the candidates to the proper county officials as required by law. *State ex rel. McAulay v. Reeves,* 196 Wash. 1, 81 P. (2d) 860. In that case, the secretary of state refused to accept McAulay's declaration of candidacy for judge of the supreme court on the ground that he was ineligible under Art. II, § 13, of the state constitution, because he was, at the time, a member of the legislature which had increased the emoluments of the judicial office. There, the facts upon which the secretary acted were of public record and undisputed. In addition, she had the authority of judicial precedent for her action in the case of *State ex rel. Chealander v. Carroll,* 57 Wash. 202, 106 Pac. 748. Granting McAulay's application for a writ of mandamus, the court, distinguishing the *Chealander* case, said:

"To hold that the respondent in the instant case had the right to make a determination of the relator's eligibility for the office for which he desired to file would be something more than a mere extension of the nar-

row rule of the *Chealander* case. It would amount to a judicial decision that it is the right of every filing officer to determine the eligibility of candidates as to whose eligibility a colorable question can be raised, and to determine it according to that officer's individual construction of constitutional provisions and statutes and according to his individual findings of fact, with the added danger that, in times of stress, his determination might be influenced by his prejudices or by partisan considerations. We find nothing in our statutes or in our decisions indicating that such powers have been conferred upon such officers. The right to exercise a power so sovereign in its nature as the judicial power cannot be successfully spelled out by mere inference or conferred by judicial decision."

Subsequently, on rehearing of the *McAulay* case, the *Chealander* case was flatly overruled.

In the instant case, the secretary of state has neither judicial precedent, public records, nor undisputed facts to sustain her refusal to file the certificate of nominations and declarations of candidacy.

■ The attorney general attempts to sustain her action on the authority of a number of decisions of Federal courts in cases arising under Title 8, § 137, U. S. C. A., providing for the deportation of undesirable aliens. In many of these cases, it is broadly asserted that it is well known that the Communist Party advocates the overthrow of the government of the United States by force and violence. A reasonable scrutiny of these decisions, however, discloses the fact that the statements are made in reviewing a record made before the department of labor, and that the act (Title 8, § 137, U. S. C. A.) confers upon the secretary of labor quasi-judicial powers and the right to take and weigh evidence. In other words, it is implicit in all these decisions, and explicit in some, that the statements in the opinions were based upon evidence in the record rather than upon judicial notice. *Antolish v.*

*Paul,* 283 Fed. 957; *United States v. Commissioner of Immigration,* 14 Fed. Supp. 484; *Strecker v. Kessler,* 95 F. (2d) 976; *Kessler v. Strecker,* 307 U. S. 22, 59 S. Ct. 694.

Assuming, however, that the decisions have the effect claimed for them by the attorney general, for us to accept them as authority in the stead of evidence, would be to build hearsay upon hearsay. To accept them as authority for our taking judicial notice that the Communist Party advocates the overthrow of the government of the United States by force and violence, would be untenable for two reasons: (1) Relators, speaking through their counsel, deny that such is the purpose of the party with as much or greater vehemence than the attorney general asserts it to be; (2) the legislature has provided a method by which the fact may be determined through judicial process. Rem. Rev. Stat., § 2563 [P. C. § 8746], provides:

"Every person who—

"(1) By word of mouth or writing shall advocate, advise or teach the duty, necessity or propriety of overthrowing or overturning organized government by force or violence, or by assassination of the executive head or of any of the executive officials of government, or by any unlawful means; . . .

"Shall be punished by imprisonment in the state penitentiary for not more than ten years, or by a fine of not more than five thousand dollars, or by both."

We are not warranted in this proceeding in taking judicial notice of facts which would mark the relators as felons. To justify a decision holding relators guilty of criminal anarchy, the crime should be charged under Rem. Rev. Stat., § 2563, and the issue should be presented, upon competent evidence, to a jury for determination.

Of the one reason for rejecting the certificate of nominations which was within the scope of the secre-

tary's power under the statute, little was said in the arguments and little need be said here. The obvious purpose of the provision in Laws of 1937, chapter 94, § 5, requiring that the party name or principle shall not exceed five words, is to prevent encumbering the official ballots with long party titles or statements of principles. The party name and the statement of purpose and principles in this instance were contained in the notice calling the convention. The statute requires proof of publication of the notice. So, as a part of the certificate of nominations, appeared both the party name and the statement of principles. It is obvious that the party name, and not the statement of principles, was submitted to be printed on the ballots. The party name complies with the requirement of the statute.

It is ordered that the alternative writ of mandamus heretofore issued on the 11th day of October, 1940, be and the same is hereby made peremptory.

MAIN, BEALS, ROBINSON, DRIVER, and STEINERT, JJ., concur.

MILLARD, J. (dissenting)—We may aptly say with Madame Roland in her Memoirs, "O liberte, comme on t'a jouee!" ("O Liberty, how thou hast been played with").

The deadliest foe of democracy is not autocracy, but liberty unrestrained. It was never contemplated by the framers of the state and Federal constitutions that any guaranty therein—right of free speech, free press,—sanctioned an abuse of such right. It was never intended that any constitutional guaranty should afford a cover for any group whose objective was the destruction by force and violence of this government. As surely as the Communist Party approximates its avowed purposes, individual liberty is de-

stroyed. It is fundamental that a state is entitled to protect itself from the abuse of the privileges of its institutions through an attempted substitution of force and violence in the place of peaceful political action in order to effect changes in government.

The thought is ably expressed, as follows, by the attorney general:

"It was never intended that our Federal and state constitutions and statutes, or judicial decisions made thereunder, should be perverted into instruments whereby basic concepts of liberty and freedom could be destroyed. Nor was it contemplated that the privileges or guarantees of our body of laws or decisions be so extended as to become a protective suit of armor to harbor those who have the avowed purpose of obliterating that very same system of laws and the attendant privileges of a free people."

The secretary of state—all state officials—must, as a prerequisite to qualification for the office, take an oath to support the constitutions and laws of the Federal government and of the state of Washington. The rejection by the secretary of state of the certificates of nomination of the Communist Party was as expressive of her intention to preserve, protect, and defend the government as was the eloquent, yet simple, language of President Lincoln in his first inaugural address, March 4, 1861, at which time seven Southern states had already adopted acts of secession. President Lincoln said:

"You can have no oath registered in heaven to destroy the government; while I shall have the most solemn one to 'preserve, protect, and defend' it."

It is a violation of both state and Federal statutes to advocate the overthrow of our government by force and violence or by subversive means. Rem. Rev. Stat., § 2563; chapter 439, 3d Sess. 76th Cong. The selective training service act of 1940 (conscription law), chap-

ter 720, 3d Sess. 76th Cong., provides that, whenever a vacancy is caused in the employment rolls of any business or industry by reason of induction into the service of the United States of an employee pursuant to the conscription act, such vacancy shall not be filled by any person who is a member of the Communist Party or the German-American Bund. The Federal emergency relief appropriation act, chapter 432, 3d Sess. 76th Cong., provides that no alien, no Communist, and no member of any Nazi Bund organization, shall be given employment or continued in employment on any work project prosecuted under that act.

It is a matter of common knowledge, and it has been determined by judicial decision, that the Communist Party has as its principal objective the overthrow of government by force and violence. *Murdoch v. Clark,* 53 F. (2d) 155; *United States v. Commissioner of Immigration,* 57 F. (2d) 707; *People v. Fitzgerald,* 14 Cal. App. (2d) 180, 58 P. (2d) 718; *Skeffington v. Katzeff,* 277 Fed. 129; *United States v. Smith,* 2 F. (2d) 90; *Kjar v. Doak,* 61 F. (2d) 566.

Knowing, as we must know (23 C. J. 123, § 1937), and as the secretary of state knew, that the Communist Party's objective was the overthrow of established government by force and violence, we should approve the action of the secretary of state which evinced a high and proper regard for her oath of office. The Communist Party is an outlaw, and, as we said in *State ex rel. Hamilton v. Martin,* 173 Wash. 249, 23 P. (2d) 1, in which we approved, for relief of the poor, a bonded indebtedness in excess of the constitutional debt limitation without submission to the voters at a general election as prescribed by the constitution:

"It is not to be considered that our constitution makers contemplated that there must be actual, armed,

insurrection, with bloodshed, before taking steps and providing means with which to suppress it."

In the rejection of the certificates of nomination or the individual declarations of candidacy of the relators, the secretary of state did not interfere with the free exercise of the right of suffrage of the relators. They had the privilege of voting in the regular primary election, and they have not been denied the privilege of participating in the general election. Their organization is not, in fact, a national political party; it is an international organization, whose avowed purpose is to overthrow organized government by force and violence. No constitutional rights of the Communist Party have been abridged by rejection of the certificates of nomination.

With all deference to my associates, I say it is a mistaken policy to issue the writ in this case and thereby encourage an adjudged outlaw, by such tacit sanction of the outlaw's abuse of constitutional guarantees, to continue a course which may result in armed insurrection and bloodshed. Time does not permit, nor, possibly, would aught worthwhile be subserved thereby, further discussion of the merits or the technical feature of the proceeding, on both of which the application for the writ should be denied.

SIMPSON and JEFFERS, JJ. (dissenting)—We dissent from the majority opinion on the ground that the Communist party advocates the overthrow of organized government by force, and for that reason is not entitled to a place upon the ballot.