[No. 3625-2. Division Two. September 8, 1978.]

BRYAN L. FISCHNALLER, *Appellant*, v. THURSTON
COUNTY, ET AL, *Respondents*.

*Bryan L. Fischnaller,* pro se.

*Patrick D. Sutherland, Prosecuting Attorney,* and *Richard A. Strophy, Deputy,* for respondents.

SOULE, J.—Plaintiff, Bryan Fischnaller, brought this action for a declaratory judgment pursuant to RCW 7.24. He also sought a writ of mandamus pursuant to RCW 4.16. He asked for a declaration that article 11, section 4 of the Washington State Constitution as amended by amendment 21, be declared violative of the United States Constitution, amendment 14, section 1, and sought a similar declaration with respect to a parallel provision in Thurston County resolution No. 5896. In addition, he sought an order directing the auditor of Thurston County to accept his declaration of candidacy and to place his name on the ballot for a special election of freeholders to be held September 19, 1978.

The Superior Court rejected both prayers for relief and entered a judgment of dismissal on August 17, 1978. The matter has come before us on an emergency basis. At the hearing on August 22, 1978, we were asked to render an immediate decision because August 23, 1978, was represented as the deadline for submitting copy for the ballots. Consequently, the court deliberated after oral argument and then announced from the bench its decision to affirm, with a written opinion to follow as soon as possible.

Two issues are presented. First, does the auditor have a right to reject a declaration of candidacy which, on its face, demonstrates a failure to comply with residence requirements fixed by the Washington State Constitution and the county resolution calling for a special election? Second, does the 5-year requirement established by the twenty-first amendment to the Washington State Constitution and

Thurston County resolution No. 5896 violate the Fourteenth Amendment to the United States Constitution? Because the validity of the resolution depends on the validity of the constitutional provision, we will hereafter address the matter primarily in terms of the constitutional provision.[1]

On June 27, 1978, an election of freeholders was called by the Thurston County Commissioners for the purpose of preparing a "home rule" charter. On August 7, 1978, plaintiff filed with the Thurston County Auditor, a declaration of candidacy which stated *on its face* that the plaintiff had been a resident of the county for 3 years. The declaration was received and filed by the auditor's administrative assistant and election supervisor, but on August 10, 1978, upon review by the auditor, it was rejected. The plaintiff was notified by letter that his declaration of candidacy was rejected and that his name would not be placed upon the ballot. The reason given was that the declaration indicated on its face that the plaintiff was ineligible because he had resided in the county for only 3 years, whereas the operative county resolution and constitutional provisions require 5 years residency.

Plaintiff argues that the auditor had no right to pass upon plaintiff's eligibility because in doing so, he was necessarily performing a judicial function. Under the decisions of *State ex rel. McCaffrey v. Superior Court,* 20 Wn.2d 704, 149 P.2d 156 (1944) and *State ex rel. McAulay v.*

---

[1]Article 11, section 4 as amended by the twenty-first amendment to the Washington State Constitution reads in pertinent part: "there shall be chosen by the qualified voters of said county not less than fifteen (15) nor more than twenty-five (25) freeholders thereof, as determined by the legislative authority, who shall have been residents of said county for a period of *at least five (5) years* preceding their election and who are themselves qualified electors, . . ." (Italics ours.)

Section 5 of Thurston County Resolution No. 5896 reads in pertinent part: "All freeholder positions shall be non-partisan and no filing fee shall be required. Each candidate must be a qualified elector of Thurston County and of the County Commissioner District for which he/she files and a resident of the county for a period of *at least five years* preceding their election." (Italics ours.)

*Reeves,* 196 Wash. 1, 81 P.2d 860 (1938), it is clear that an officer with whom an aspiring candidate must file may not reject a declaration of candidacy on the grounds that the candidate is ineligible if that rejection is based on extrinsic factual knowledge or involves the interpretation of statutory or constitutional provisions.

In *State ex rel. McAulay v. Reeves, supra,* the Secretary of State, in rejecting the declaration of candidacy, not only drew upon her independent knowledge of the status of the plaintiff as a member of the legislature, but as the court stated on page 3:

> [T]he secretary of state thus assumed to decide, and did decide, a most complex and difficult question, or, rather, a great many difficult questions, at least one of which, it may be plausibly argued, cannot definitely be answered without resorting to the opinion of experts. In order to make the decision, she was, of course, required to interpret the constitutional provision; and it is susceptible, or at least parts of it are susceptible, of several interpretations. She was also required to interpret chapter 229, Laws of 1937, a seven–page statute.

In *State ex rel. McCaffrey v. Superior Court, supra,* the auditor interpreted Rem. Rev. Stat. (Supp.) § 5180 (now RCW 29.18.030) as requiring residence in the appropriate district at the time of filing the declaration of candidacy rather than on the date of the election. The court recognized that this interpretation was debatable when it said on page 711:

> Should the legislature provide, by statute, the time at which eligibility to file for office must exist, it would greatly clarify the matter in future cases.

Contrary to the statement of plaintiff to us and the assertion by the author of the dissent in *Eggert v. Ford,* 21 Wn.2d 152, 150 P.2d 719 (1944), the defect in *McCaffrey* was not apparent on the face of the declaration of candidacy. Rather, as noted by the preceding quotation, the statute was unclear as to the time when residency must exist.

An earlier case, *State ex rel. Chealander v. Carroll,* 57 Wash. 202, 106 P. 748 (1910), permitted a public official charged with accepting declarations of candidacy to inquire into the eligibility of a candidate and consider information extrinsic to that contained in the declaration of candidacy itself but was overruled on that issue by *State ex rel. McAulay v. Reeves, supra.* We distinguish that situation from the problem now before us because in *McAulay,* the officer receiving the declaration did base his decision on extrinsic facts and his interpretation of charter provisions. Eligibility could not there be judged from the face of the declaration compared with the plain language of the charter.

In the case before us, the auditor's action was not based upon any factual information extrinsic to the document offered by the plaintiff. On its face, it disclosed ineligibility measured by the clear and unambiguous requirements of the state constitution and the county resolution. The language required no interpretation. On these facts, we see no reason to characterize the auditor's action as a judicial determination invading the province of the court. That action was not founded upon any judicial interpretation of the elusive concept of residence but simply upon the applicant's assertion that he had been a resident of the county for only 3 years.

The right and duty of the auditor is analogous to that at issue in *Eggert v. Ford, supra,* in which it was held that mandamus will not lie to compel an auditor to accept for recording, an instrument affecting title which is unacknowledged and therefore not in compliance with Rem. Rev. Stat. (Supp.) § 10551, requiring that deeds be acknowledged.

Another analogy may be found in the right of the Secretary of State to refuse to accept articles of incorporation where the proposed name clearly conflicts with a name already being used by an existing corporation where that conflict is apparent from the records within the office. *See*

*State ex rel. Baker River & Shuiksan R.R. v. Nichols*, 51 Wash. 619, 99 P. 876 (1909).

In *State ex rel. McAulay v. Reeves, supra*, the court did note the dangers to be apprehended from permitting the filing officer to make a judicial decision affecting the eligibility of candidates. On page 7, the court said:

> In fact, to hold that the respondent in the instant case had the right to make a determination of the relator's eligibility for the office for which he desired to file would be something more than a mere extension of the narrow rule of the *Chealander* case. It would amount to a judicial decision that it is the right of every filing officer to determine the eligibility of candidates as to whose eligibility a colorable question can be raised, and to determine it according to that officer's individual construction of constitutional provisions and statutes and according to his individual findings of fact, with the added danger that, in times of stress, his determination might be influenced by his prejudices or by partisan considerations.

The reasons expressed are sound to the extent that they are addressed to the use of interpretative processes by the auditor or to the exercise of his independent fact–finding efforts. On the narrow facts before us, however, they impress us as being without force because, where the defect is apparent upon the face of the instrument and the constitution and resolution are plain in their meaning, there is no room for the exercise of discretion.

We hold that the auditor has a right to reject a declaration of candidacy which on its face demonstrates a failure to comply with plainly stated applicable residence requirements fixed by the Washington State Constitution and pertinent statutory provisions of the concerned governmental subdivision of the state, so long as no resort is had to extrinsic facts or to interpretations of the constitution or statutory provisions.

■ Plaintiff argues that because an assistant to the auditor did in fact receive and file his declaration of candidacy, the auditor has no right thereafter to reject it. We might agree with plaintiff, had he been prejudiced by the

passage of an appreciable amount of time. However, the facts quickly became known to the auditor and he acted promptly to correct a manifest error by one of his staff. We know of no reason why he should not be accorded reasonable power to correct office errors. Therefore, we hold that when the auditor acts promptly, he is not precluded from rejecting a declaration of candidacy insufficient on its face, despite the fact that it has been received and filed by one of his assistants.

■■■ The second issue, the validity of the 5-year residency requirement in the light of the fourteenth amendment to the United States Constitution, involves a classic policy problem. How far should the judicial branch of the government intrude into matters which are the primary concern of the legislative arm of the government? As a general principle, we believe it should be no farther than compelled by binding decisions of the United States Supreme Court.

The twenty-first amendment to our constitution established the 5-year residency requirement for the office of freeholder to form a county "home rule" charter. It came into being only after receiving a two-thirds majority vote of each house of the legislature and a majority vote of the electorate; and we believe that the will of the people so expressed should not lightly be overridden.

In *Dunn v. Blumstein,* 405 U.S. 330, 31 L. Ed. 2d 274, 92 S. Ct. 995 (1972), the Tennessee constitutional requirement of 1-year residency as a prerequisite to the right to vote was held to conflict with the equal protection clause of the Fourteenth Amendment because it was found to discriminate against those who exercise the constitutional right to travel at the expense of the constitutional right to vote, and the court could find no compelling state interest justifying the discriminatory classification caused by a residency requirement as long as 1 year. On the binding authority of *Dunn v. Blumstein, supra,* the Supreme Court of this state reached a similar result in *Moen v. Erlandson,* 80 Wn.2d 755, 498 P.2d 849 (1972), although not without a strong

dissent criticizing the lack of judicial restraint demonstrated by the reasoning of *Dunn.*

We are now asked to apply the same rule to reach the same conclusion with respect to the right to run for public office, but there is no binding decision of the United States Supreme Court compelling this result. On the contrary, that court has declined the opportunity to specifically extend the same rule to candidates for public office. *See Chimento v. Stark,* 353 F. Supp. 1211 (D.N.H.), *aff'd,* 414 U.S. 802, 38 L. Ed. 2d 39, 94 S. Ct. 125 (1973) and *Hadnott v. Amos,* 320 F. Supp. 107 (M.D. Ala. 1970), *aff'd,* 401 U.S. 968, 28 L. Ed. 2d 318, 91 S. Ct. 1189 (1971).

*Hadnott v. Amos, supra,* made it clear that residence requirements to be a candidate need not be the same as to be a voter. *Chimento v. Stark, supra,* holds that impingement of the residence requirement on the right to travel freely is indirect and remote when related to candidacy for office. The relationship between the 7–year residence requirement in the New Hampshire constitution for the office of governor and the right to travel was found to be too attenuated to constitute an infringement on the constitutionally protected right to travel. *Chimento* also attaches some significance to the fact that the residency requirement is contained in the constitution of the state, rather than in the statute or local ordinance, and observes that while the dead hand of the past should not be allowed to shape the future, something more than the disappointment of a frustrated candidate is needed to erase a long–standing constitutional provision.

Solely for the purpose of this decision, we will apply the "compelling interest" test. *Lawrence v. Issaquah,* 84 Wn.2d 146, 524 P.2d 1347 (1974); *Chimento v. Stark, supra.* We do note, however, that the concurring opinion in *Lawrence* suggests that the true constitutional test is not that of a *compelling* state interest, but rather of *legitimate* state interest. We further observe that in *Kraft v. Harris,* 18 Wn. App. 432, 568 P.2d 828 (1977), the majority upheld a 4–year requirement for the office of corporation counsel applying

the "legitimate interest" test, and stated that while *Lawrence v. Issaquah, supra,* used the phraseology of "compelling interest," it actually did apply the "legitimate interest" test.

In *Lawrence,* a 1–year residency requirement for the office of city councilman was held to be reasonable. The court did recognize, as do we, that a 7–year requirement would be unreasonable with respect to the office of city councilman although not for the office of governor, as in *Chimento.*

Whether the "compelling interest" test can be met by the respondent in this case may well depend upon the significance one attaches to the duties of the office of freeholder. We believe the duties to be highly significant. The elected freeholders have the responsibility for constructing the fundamental framework for a workable governmental structure which embraces all aspects of county government, except the duties vested in the prosecuting attorney, superintendent of schools, judges of the superior court and justices of the peace (presumably now district court judges). The responsibilities are heavy, and the results of their efforts will have long–range effects upon the county. If fundamental decisions are made improvidently by persons who lack sufficient background knowledge of local needs, or by persons whose true attitudes toward local problems have not been sufficiently demonstrated to the electorate by reason of residence in the county, harm can be done which will be difficult to correct.

Problems which impel a county to abandon the conventional statutory framework for government and seek to solve local governmental problems by resort to a "home rule" charter usually have persisted over a substantial period of time. Those who seek to correct them should be thoroughly familiar with them and their background. Pre-

sumably, the recognition of this condition is one of the factors which was considered when the 5-year requirement was incorporated into the Washington State Constitution.

Likewise, because the undertaking is serious, the electorate is entitled to substantial exposure to their candidates which can best be gained by long residence in order to fully judge their aptitudes, intelligence, integrity and habits of industry.

Viewed in this light, a residency requirement for the office of freeholder looms large in importance. Local officials selected within the framework of an established local government are surrounded by legal checks and balances as well as having the aid of experienced staff people. As such, their responsibilities can, in a large part, be discharged by following established laws and procedures. Freeholders are less clearly guided and therefore, to be effective, must have personal qualities which assure that they can function efficiently in a somewhat unstructured situation.

Because, in our judgment, the office of freeholder should be, and is, one of very substantial local importance, we hold that the constitutional requirement of 5-year residence in the county passes the "compelling interest" test because the time so fixed insures that the candidates have adequate exposure to local problems and that the local electorate has adequate exposure to the candidates so that their true personal qualities may be intelligently assessed. The necessary and substantial governmental interest lies in assuring adequate mutual exposure of the public to the candidate and the candidate to the public and we must defer to the constitutional provision that the problems of the community cannot be satisfied by a lesser time. We further hold that the impingement upon appellant's personal right to seek public office is not significant enough to warrant us in

striking down the 5–year residency requirement of the twenty–first amendment to our state constitution.

REED, A.C.J., and PETRIE, J., concur.

Reconsideration denied September 19, 1978.

Review denied by Supreme Court February 2, 1979.