[No. 17358.    *En Banc.*    December 16, 1922.]

THE STATE OF WASHINGTON, *on the Relation of Bloedel-Donavan Lumber Mills et al., Plaintiff,* v.
C. W. CLAUSEN, *as State Auditor,*
*et al., Respondents.*[1]

MANDAMUS (32)—ACTS OF PUBLIC OFFICERS—OFFICIAL CHARACTER OF ACTS. Mandamus will only issue against an officer in his official capacity to compel the performance of a duty imposed by law.

STATES (25, 28)—APPROPRIATIONS—NECESSITY—ILLEGAL EXPENDITURES—TRANSFER OF FUNDS—POWERS OF OFFICERS. Although the accident fund created by the workmen's compensation act exclusively for the purposes therein specified may have been illegally depleted in the payment of salaries and wages of employees in the division of industrial insurance, mandamus does not lie to compel the transfer from the general fund to the accident fund, of money to the extent of such wrongful diversion; since Const., Art. VIII, § 4, provides that no money shall ever be paid out of the treasury or any of its funds except in pursuance of an appropriation by law, which shall distinctly specify the sum appropriated and its object; and the money in the general fund appropriated for administrative expenses was not by the legislature appropriated for the purpose of replenishing the industrial fund, and such transfer would be into a fund not authorized and for an object not specified in the appropriation act (HOLCOMB, MACKINTOSH, BRIDGES, and TOLMAN, JJ., dissent).

Application filed in the supreme court July 7, 1922, for a writ of mandamus to compel the transfer of money from the general fund to the accident fund created by the workmen's compensation act. Denied.

*Farrell, Kane & Stratton,* for relator.

*The Attorney General* and *John H. Dunbar, Assistant,* for respondents.

MAIN, J.—This is an original application in this court for a writ of mandamus by which it is sought to compel the transfer of a sum of money appropriated from the general fund to the accident fund created by

[1]Reported in 211 Pac. 281.

the workmen's compensation act. Rem. 1915 Code, § 6604-4. [Rem. Comp. Stat., § 7676.] The relators are all employers of labor and engaged in extra-hazardous occupations. The respondents are the state auditor and the state treasurer.

By Laws of 1921, ch. 155, p. 581, which is the general appropriation act, the sum of $506,147 was appropriated from the general fund for the purpose of operating the department of labor and industry, and the sum of $215,535 was appropriated from the accident fund, created under the workmen's compensation act, for the administrative expenses of the department of labor and industry for the present biennium. After this appropriation was made, warrants were issued upon the accident fund for salaries and wages of the employees in the division of industrial insurance, and also for supplies, materials and service and capital outlays, in such an amount that the appropriation from the accident fund was entirely depleted. The relators, claiming that the appropriation from the accident fund for the purposes mentioned· was unlawful, brought this action to compel the transfer to that fund from the. general ˙fund appropriation the sum of $215,535. There was at the time left in the appropriation from the general fund sufficient money to reimburse the accident fund.

Without deciding, it will be assumed, first, that the use of the accident fund for the payment of administrative expenses was unlawful; and second, that the relators have such an interest in the subject-matter that they can maintain this action. The question then is, even though the money was illegally expended, can the court compel the transfer of money from the general fund to the accident fund to replenish that fund to the extent of such unwarranted expenditures? It

is a well settled rule that mandamus will lie against an officer in his official capacity only when he has refused to perform a duty imposed upon him by law pertaining to his office. In *Hodgeman v. Olsen,* 86 Wash. 615, 150 Pac. 1122, L. R. A. 1916A 739, it was said:

"The action is brought against respondent in his official capacity. Mandamus will only issue against an officer in his official capacity to compel the performance of a duty imposed by law as resulting from or pertaining to his office." (Citing authorities.)

Unless, then, it was the duty of the respondents to make the transfer sought in this action, the writ cannot be issued by the court directing them to do so. No statute has been called to our attention which imposes any such duty upon the respondents. The legislative expression is to the contrary; to cover the administrative expenses, one appropriation was made from the general fund and the other from the accident fund. The constitution, § 4, Art. VIII, provides:

"No moneys shall ever be paid out of the treasury of this state, or any of its funds, or any of the funds under its management, except in pursuance of an appropriation by law; . . . and every such law making a new appropriation, or continuing or reviving an appropriation, shall distinctly specify the sum appropriated, and the object to which it is to be aplied, and it shall not be sufficient for such law to refer to any other law to fix such sum."

Under this provision, no moneys can be paid out of the state treasury, or any of its funds, except in pursuance of an appropriation by law, and such law must distinctly specify the sum appropriated and the object to which it is to be applied. The money in the general fund appropriated for the administrative expenses was not by the legislature appropriated for the

purpose of replenishing the industrial fund, even though the expenditures from that fund may have been illegally made. The relators, in the affidavit supporting the application, state that unless the respondents are required to transfer the $215,535 from the general fund to the accident fund, they, as employers of men engaged in extra-hazardous employment, "will be required and compelled to pay into the said accident fund, as premiums, assessments and contributions, a large sum in excess of the amount necessary and proper to make good the legitimate depletion and drain upon said accident fund from the payment of accident claims and other proper and lawful disbursements, exclusive of the expense of administration." It therefore plainly appears that, if the transfer was made, it would be into a fund not authorized by the legislature and for an object not specified in the appropriation act. It is not a sufficient answer to this to say it would only in effect compensate the relators for money which they had paid into the accident fund and which had been wrongfully paid out. The purpose of the transfer, if made at this time, would operate to decrease the sum which the relators would be required to pay into the accident fund in the future as premiums and assessments.

The relief for the situation, if any, is with the legislature and not with the court. Had an action been brought, before the expenditures of the money from the accident fund, to restrain the use of that fund for administrative purposes, questions would have arisen which are not material in this proceeding, and which have neither been discussed nor decided here for that reason.

The writ will be denied.

PARKER, C. J., FULLERTON, MITCHELL, and PEMBERTON, JJ., concur.

HOLCOMB, J. (dissenting)—The state financial officers have many times declined to disburse funds upon warrants until this court had first determined the validity of the law under which the funds were to be disbursed. The present law, if it can be called a law, appropriating $215,535 from the accident fund under the workmen's compensation act, for the administration expenses of the department of labor for the present biennium, is not merely doubtful, but positively invalid.

By the terms of § 6604-4, Rem. Code [Rem. Comp. Stat., § 7676], "the fund created shall be termed 'The Accident Fund,' which shall be devoted exclusively to the purpose specified for it in this act," and, "the intent is that the fund created under this section shall ultimately become neither *more nor less than self-supporting exclusive of the expense of administration.*" [All italics mine.]

The employers of labor have been paying into the "Accident Fund" thereby created, the contributions required, under the explicit terms and guaranty that the fund becomes self-supporting, *exclusive of the expense of administration.* That expense was imposed upon the public in lieu of its escaping other burdens, and in order that industry should not be unduly burdened.

The legislature is powerless to amend that provision by a mere appropriation act. No custom has been built up to sustain it as was held in *State ex rel. Jones v. Clausen,* 78 Wash. 103, 138 Pac. 653, to support a former appropriation act by this court. Besides it is practically conceded that the appropriation could not by indirection amend the law, and is therefore unlawful.

The financial officers acted at their peril in disbursing money illegally appropriated. They cannot invoke the aid of § 4, Art. VIII, of the constitution, and it has no application.

What has been done is that the officers have disbursed, first, funds illegally appropriated, and now claim that no court can compel them to restore the funds to the accident fund where they belong.

As a matter of fact, the funds have simply been withdrawn from one receptacle in the treasury, when they should have been withdrawn from another. It is merely a matter of bookkeeping to restore the funds to the proper receptacle, and this court has power to require it.

In my opinion, the writ should be granted.

I therefore dissent.

MACKINTOSH, BRIDGES, and TOLMAN, JJ., concur with HOLCOMB, J.