[No. 29193. *En Banc.* July 18, 1944.]

CARL H. EGGERT *et al., Appellants,* v. JOSEPH E. FORD, *as Auditor of Pierce County, Respondent.*[1]

*Skeel, McKelvey, Henke, Evenson & Uhlmann* and *Carkeek, Harris, Harris & Carroll,* for appellants.

*Thor C. Tollefson, G. E. Peterson,* and *Theo L. DeBord,* for respondent.

[1]Reported in 150 P. (2d) 719.

ROBINSON, J.—The appellants, as relators, applied to the superior court of Pierce county for a writ of mandamus to compel the county auditor to record a written instrument showing their interest in certain Pierce county lands. A general demurrer was sustained. The relators refused to plead further, and the cause was dismissed. The demurrer admitted allegations briefly summarized in the following paragraph:

On November 17, 1916, Jerry P. Eggert executed an instrument denominated "Declaration of Trust," declaring that he had taken title to certain Pierce county lands therein described for convenience only, and that, in fact, he held an undivided one-third thereof for the use and benefit of Carl H. Eggert and an undivided one-third for the use and benefit of Henry L. Eggert, the remaining one-third being his own property. The instrument was not in any way acknowledged, but Mr. Eggert's signature was certified by a witness.

Jerry P. Eggert died in August, 1942. In January, 1943, the beneficiaries presented the instrument to the respondent, Joseph E. Ford, auditor of Pierce county, and, tendering the proper fee, asked that it be placed of record. The auditor refused to record the instrument, for the sole reason that it was not acknowledged as required by statute.

The only question presented here is: Was the respondent's demurrer properly sustained?

Since mandamus will lie against an officer in his official capacity only to enforce a duty pertaining to his office (*State ex rel. Bloedel-Donavan Lbr. Mills v. Clausen,* 122 Wash. 531, 211 Pac. 281), the first step in considering the problem presented is to inquire what duties as to recording instruments affecting title to real property are imposed upon county auditors by our statute law. The general duties of county auditors are set out in Rem. Rev. Stat., § 10601 [P. C. § 1640], and, in so far as they are material to the present inquiry, are defined as follows:

"He must, upon payment of his fees for the same, record separately in large and well-bound books:

"(1) Deeds, grants and transfers of real property, mortgages and releases of mortgages of real estate, powers of attorney to convey real estate, and leases which have been acknowledged or proved: . . .

"(7) All such other papers or writings as are required by law to be recorded and such as are required by law to be filed if requested so to do by the party filing the same."

It is said by the appellants in their brief that the foregoing statute "places the duty upon the County Auditor to record all instruments coming within its general description." If it is meant by this that it is the auditor's duty to record all instruments purporting to affect title to real estate or purporting to convey real estate, even though unacknowledged, we think the statement is manifestly too broad, for it is provided in Rem. Rev. Stat., § 10550 [P. C. § 1908-21], that:

"Every conveyance of real estate, or any interest therein, and every contract operating or evidencing any encumbrance upon real estate, shall be by deed: . . ."

The next section of the statute (§ 10551 [P. C. § 1908-22]) provides:

"Every deed shall be in writing, signed by the party bound thereby, and acknowledged by the party before some person authorized by this act to take acknowledgments of deeds."

We do not construe subd. (1) of § 10601 as making it the duty of a county auditor to record unacknowledged instruments affecting the title to real property. Until such instruments are acknowledged, they are not what they are called or purport to be. For example, an instrument, in every other respect fully satisfying the requirements of a deed, except the acknowledgment of the grantor, is not yet a deed, and a statute requiring an auditor to record deeds does not make it his duty to record that instrument. Nor is the duty to record the instrument involved in this cause imposed by subd. (7) of § 10601, since it is not an instrument which the law requires to be recorded. It may be, however, that the duty to record may be imposed by the general recording statute, for § 10 of that statute

(Laws of 1927, chapter 278, p. 673; Rem. Rev. Stat., § 10596-10 [P. C. § 1914-10]) provides that:

"A recording officer, upon payment or tender to him of the lawful fees therefor, shall record in his office any instrument authorized or permitted by this act to be so recorded."

The term "recording officer" is expressly defined in § 4 of the act as meaning "the county auditor of the county." If the appellants are entitled to the writ by virtue of this act, it must be found that the declaration of trust presented to the respondent auditor is an instrument authorized or permitted by the act to be so recorded.

Only those parts of the act will be quoted which are material to the inquiry. Subdivision (3) of § 1 reads, in part, as follows:

"The term 'conveyance' includes every written instrument by which any estate or interest in real property is created, transferred, mortgaged or assigned or by which the title to any real property may be affected, . . ."

The declaration of trust involved in this act, therefore, undoubtedly purports to be a conveyance, as above defined.

Section 2 of the act reads as follows:

"A conveyance of real property, when acknowledged by the person executing the same (the acknowledgment being certified as required by law), may be recorded in the office of the recording officer of the county where the property is situated. Every such conveyance not so recorded is void as against any subsequent purchaser or mortgagee in good faith and for a valuable consideration from the same vendor, his heirs or devisees, of the same real property or any portion thereof whose conveyance is first duly recorded. An instrument is deemed recorded the minute it is filed for record."

It appears that the only conveyances "authorized or permitted" by this section to be recorded, and, therefore, the only conveyances which the auditor is directed by § 10 to record, are those "acknowledged by the person executing the same (the acknowledgment being certified as required by law)." The appellants say of the general recording act:

"Nowhere is there a prohibition against the recording of other instruments nor any authorization to the County Auditor to decline the recording of instruments not executed in accordance with the provisions of Chapter 278 of the laws of 1927."

██ This is quite true, but completely irrelevant. A writ of mandate may not issue to an officer commanding him to do a thing merely because he is not forbidden to do it, but only to command him to do an act which it is his official duty to perform.

A great number of the states have recording statutes similar to our own, yet no case has been cited to us, other than *People ex rel. Consumers' Brewing Co. v. Fromme,* 35 App. Div. 459, 54 N. Y. Supp. 833, wherein a recording officer has been successfully mandamused to record an instrument affecting the title to real property. In that case, such an instrument was presented to the register or recording officer which he refused to file, because it did not bear the right amount of stamps required by the United States war revenue act of 1898. The real gist of the decision is, we think, contained in the following sentences of the opinion:

"A failure to comply with the War Revenue Law is a matter with which the register has nothing to do. The duty of the register is to record or file in his office those instruments or papers which, by the laws of the State, are entitled to be recorded or filed."

In our own researches, we have come upon another New York case wherein a writ of mandamus was issued. The case (*People ex rel. Oaklawn Corp. v. Donegan,* 226 N. Y. 84, 123 N. E. 71) is, however, clearly authority for the position taken by the respondent here. Furthermore, the *Donegan* case was decided by the court of appeals, while that cited by the appellants was decided by an intermediate court. A deed was executed by four grantors. The acknowledgment of one of them was not sufficient under the statute, because it was taken by an officer of another state who neglected to attach a certificate of his authority and as to the genuineness of his signature, as required by the New York statute. The register refused to record the in-

strument, on the sole ground that it was not properly acknowledged, and the matter finally reached the New York court of appeals. The general recording statute was evidently of the same permissive class as our own, for the opinion in the case begins as follows:

"Section 291 of the Real Property Law (Consol. Laws, c. 50) provides that a conveyance *may* be recorded on being duly acknowledged by the person executing the same." (Italics ours.)

(Our statute reads: "A conveyance . . . , when acknowledged by the person executing the same . . . , may be recorded," etc.)

The court held that, since the acknowledgment as to one of the grantors was defective, the record would not be notice to subsequent purchasers as to him, and that, *if he had been the sole grantor, the instrument could not be lawfully recorded.* It held, however, that, since three of the grantors had acknowledged the instrument, it could be lawfully recorded as to them. It was held that the writ should issue for that purpose, but that, since the recording officer had acted in good faith, no costs should be levied against him, and it was expressly provided that the register should not be required to index the conveyance against the grantor whose acknowledgment was not in proper form.

■ It is further contended, however, that Rem. Rev. Stat., § 10599 [P. C. § 1908-28], which is § 8 of chapter 33, Laws of 1929, p. 34, and, therefore, a later enactment than the general recording act, impliedly recognizes that instruments having defective acknowledgments, or no acknowledgments at all, are entitled to record. The section reads as follows:

"Every instrument in writing purporting to convey or encumber real estate situated in this state, or any interest therein, which has been recorded in the auditor's office of the county in which such real estate is situated, although such instrument may not have been executed and acknowledged in accordance with the law in force at the time of its execution, shall impart the same notice to third persons, from the date of recording, as if the instrument had been executed, acknowledged, and recorded, in accordance with

the laws regulating the execution, acknowledgment and recording of such instrument then in force."

We are of the opinion that this section in no way enlarges the auditor's duties, as expressed in § 10601 [P. C. § 1640], chapter 278, p. 670, Laws of 1927. As we understand the argument to the contrary, it is contended that § 10599, above quoted, passed at the next session of the legislature, recognizes that instruments may be recorded, even though defectively acknowledged, and, therefore, modified and liberalized the general recording act of 1927. It is urged that § 10599 must be read and construed in connection with the general recording act, and it is said, in effect, that, when we find the 1929 legislature passing an act regulating the effect of recording defectively acknowledged instruments, it is a fair inference that it supposed it had authorized the recording of such instruments when it passed the general recording act two years before.

To the foregoing contention, we think there are several sufficient answers. The exact language of § 10 of the general recording act is that the auditor shall record "any instrument authorized or permitted *by this act* to be so recorded," (italics ours), and those are without doubt only those instruments which the preceding § 2 says "may be recorded"; that is to say, conveyances ". . . acknowledged by the person executing the same (the acknowledgment being certified as required by law)." Section 10599 does not purport to enlarge that class. It does not deal with what may be recorded, but with the effect of recording after recording has been accomplished. The title of the act in which it is found (Laws of 1929, chapter 33, p. 31), does not in any way indicate that it was enacted to regulate the recording of instruments. It reads as follows:

"AN ACT relating to conveyances and encumbrances of real estate, authorizing certain officers to take acknowledgments, prescribing forms, and repealing certain acts relating thereto."

Neither does the actual content of the act exhibit anything in the least way repugnant to the general recording

statute. Section 1 requires every conveyance of real estate to be by deed. Section 2 requires deeds to be in writing and acknowledged. Sections 3, 4, 5, and 6 relate to the taking of acknowledgments, and prescribe what officers may do under various circumstances. Section 7 validates all instruments previously executed in accordance with the provisions of the act. Section 8 (the section under discussion) provides that those not so acknowledged, if they do get of record, shall nevertheless impart constructive notice. Section 9 provides a form for warranty deeds; § 10, for bargain and sale deeds; § 11, for quitclaim deeds; § 12, for mortgages; § 13, a form for individual acknowledgments; § 14, for corporate acknowledgments; and § 15, the final section, repeals a great number of former statutes, none of which had anything to do with recording. In our opinion, it cannot reasonably be contended that anything in the chapter indicates an intention to modify the general recording act. It is urged that we should find an implied modification by resorting to liberal construction, but, to so hold, the court would clearly be compelled to leave the realm of construction and enter that of judicial legislation.

There is a very obvious and compelling reason for the passage of such legislation as § 10599. The statutes in a great majority of states have required acknowledgments as a prerequisite to recording, and, in such states where there is no statute of the type of § 10599, it has been the universal holding that the filing of an unacknowledged conveyance does not give constructive notice. Patton, Titles, p. 172, § 38; 5 Tiffany, Real Property (3rd ed.), p. 19, § 1264; 1 Jones, Mortgages (8th ed.), p. 852, § 613; 2 Devlin on Real Estate (3rd ed.), p. 1179, § 645; notes, 19 A. L. R. 1074; 72 A. L. R. 1039.

It has even been held that an unacknowledged instrument will not impart actual notice to a purchaser who sees the instrument on the record. One has only to glance at the A. L. R. notes, *supra,* to realize the grief and hardship which have been caused by the lack of such statutes as § 10599; for, under such circumstances, conveyances have

been very generally declared not to have imparted any notice if in any way defective. See, for example, *Waskey v. Chambers*, 224 U. S. 564, 56 L. Ed. 885, 32 S. Ct. 597, where the instrument had but one witness, while the statute required two; *People ex rel. Oaklawn Corp. v. Donegan*, 226 N. Y. 84, 123 N. E. 71, where there was no showing that a foreign notary was authorized to take acknowledgments; *Edwards v. Thom*, 25 Fla. 222, 5 So. 707, where the grantor's wife properly acknowledged, but he merely signed, the instrument. There are an astounding number of similar cases cited in the notes referred to.

It is conceded by both parties, and everybody knows, that defectively acknowledged conveyances, and even conveyances which do not purport to have been acknowledged at all, frequently get of record. Some auditors receive and record any instrument presented. Others, no doubt, might refuse to record a conveyance when an acknowledgment is wholly lacking, but accept for record one purporting to be acknowledged, although he believed the acknowledgment defective, thus properly giving it the benefit of the doubt.

It is reasonable to suppose that the legislature knew the commonly known fact that, in one way or another, instruments do get of record, though not acknowledged as required by law, and, therefore, enacted § 10599 to avoid the hardships that would be bound to occur if it were not provided that such instruments should impart constructive notice. So far from being a vain and useless act, the enactment of § 10599, which everyone rightly denominates a curative statute, was an imperative necessity. That this is so may be seen by examining the experience of other states having general recording statutes such as our own. This may be quickly and readily done by referring to the authorities assembled in the notes in 19 A. L. R. 1074 and 72 A. L. R. 1039.

In deference to those who so think, it may be conceded that to allow the wholesale recording of every instrument presented for record may be a better policy than that which the legislature has seen fit to adopt; but a discussion of that matter has no place here, since the court has no

legislative power, but is strictly limited to enforcing the law as it finds it. It is inescapable that § 2 of the general recording act (Laws of 1927, chapter 278, p. 670) provides that only conveyances of real property, "when acknowledged by the person executing the same (the acknowledgment being certified as required by law), may be recorded," and by § 10 makes it the duty of the county auditor to record only those instruments "authorized or permitted by this act to be so recorded." That language is not ambiguous, and leaves no room for construction.

We are besought, however, to hold that § 10599, a portion of an act which, neither in title nor in content, has anything whatever to do with *what* may be recorded, enlarges the class of instruments which are "permitted to be recorded" by the general recording act. This § 10599 is interpolated in a long act (Laws of 1929, chapter 33, p. 31), expressly reenacting the time-honored, formal requirements for all sorts of documents affecting the title to lands. Like all the rest of the chapter, it has nothing whatever to do with what may be recorded. The section itself deals only with the notice that will be given by an instrument which does not comply with the requirements of the other paragraphs of the act, if, as frequently happens in some way or another, such an instrument does get of record. Plainly, to hold that § 10599 enlarges the general recording act and makes it the duty of the county auditor to record unacknowledged conveyances would be to insert into that section something which is not there. To do so would constitute as plain an example of judicial legislation as can well be imagined.

█ Since mandamus will lie against an officer in his official capacity only to enforce a duty pertaining to his office, and we cannot find that it is the duty of a county auditor to record a wholly unacknowledged instrument, purportedly affecting the title to real property, the judgment and decree appealed from must be affirmed. It is so ordered.

STEINERT, BLAKE, JEFFERS, MALLERY, and GRADY, JJ., concur.

BEALS, J. (dissenting)—The facts are stated in the majority opinion. The applicable sections of the statute are also quoted therein. I cannot refrain, however, from again quoting Rem. Rev. Stat., § 10599, which is § 8, chapter 33, p. 34, Laws of 1929, and reads as follows:

"Every instrument in writing purporting to convey or encumber real estate situated in this state, or any interest therein, which has been recorded in the auditor's office of the county in which such real estate is situated, although such instrument may not have been executed and acknowledged in accordance with the law in force at the time of its execution, shall impart the same notice to third persons, from the date of recording, as if the instrument had been executed, acknowledged, and recorded, in accordance with the laws regulating the execution, acknowledgment and recording of such instrument then in force."

Such a section as the foregoing is not new to the statute law of this state. Rem. & Bal. Code, § 8784, reads as follows:

"Every instrument in writing purporting to convey or encumber real property, which has been recorded in the proper auditor's office, although such instrument may not have been executed and acknowledged in accordance with the law in force at the time of its execution, shall impart the same notice to third persons, from the date of recording, as if the instrument had been executed, acknowledged, and recorded in accordance with the laws regulating the execution, acknowledgment, and recording of such instrument then in force."

The section last quoted was § 2323 of the Code of 1881, and was in effect even prior to that date.

The basic question to be decided concerns the duty or right of the county auditor to accept for filing for record in his office, or to refuse to accept the same, a document concerning or affecting the title to real estate in his county which he is requested to accept for filing and record, the proper fee being tendered.

It is admitted that the document which the auditor was requested to accept for record purported to affect the title to real estate in Pierce county, and that the document was not, by the grantor therein, acknowledged before a notary public, or other officer authorized to take acknowledgments.

In the recent case of *State ex rel. McCaffrey v. Superior Court,* 20 Wn. (2d) 704, 149 P. (2d) 156, the question presented was the right of the county auditor to refuse to accept for filing a declaration of candidacy for a public office which it was contended was, and which the auditor held to be, void on its face for the reason that it showed that the declarant, at the time he tendered the declaration, was not, under the law, eligible to fill the office for which he sought to declare his candidacy. This court directed that a writ of mandate issue, requiring the auditor to accept and file the declaration. In the course of the opinion, we said:

"The auditor was, however, only an administrative officer, in so far as the filing of declarations of candidacy and the preparation of ballots are concerned. He had no power to determine the complex judicial question affecting relator's eligibility."

In the course of the opinion, this court cited the case of *State ex rel. Boze v. Superior Court,* 15 Wn. (2d) 147, 129 P. (2d) 776, in which we said:

"The determination of the eligibility of candidates for elective office, under the provisions of our constitution, constitutes the exercise of judicial power."

The court also cited the cases of *State ex rel. McAulay v. Reeves,* 196 Wash. 1, 81 P. (2d) 860, and *State ex rel. Huff v. Reeves,* 5 Wn. (2d) 637, 106 P. (2d) 729, 130 A. L. R. 1465.

In the *McCaffrey* case, the defect, if any, in the tendered declaration of candidacy appeared on the face of the declaration, and this court, without determining whether or not the declaration of candidacy was valid, held that the auditor could not determine its validity or invalidity, and should be required to accept and file the declaration.

While in the case at bar the declaration of trust sought to be recorded was manifestly not acknowledged before a notary public, border line cases frequently exist in which the question of whether or not a deed or other instrument has been acknowledged in compliance with the statute presents legal difficulties. In a deed the grantors may be named as John Wilson Brown and Sarah Jane Brown, his

wife; one grantor may sign J. Brown and the other Mrs. J. W. Brown; the names may appear in the certificate of acknowledgment in different forms. Many similar questions may be imagined. If the auditor can refuse to accept for record one instrument, probably he may exercise his judgment in refusing to accept others.

It is conceded that a county auditor may accept for record and record such an instrument as is here in question, or any other instrument purporting to affect real estate within his county. Once accepted and recorded, an instrument falling within the terms of Rem. Rev. Stat., § 10599, *supra,* constitutes constructive notice to third persons from the date of the recording.

The effect of the majority opinion is to allow county auditors to accept for record or reject such instruments at mere whim. The auditor of one county may accept them; the auditor of the adjoining county may refuse to accept them. An auditor may accept them one day and refuse them the next, and accept them again the third day. He can accept them from one person and refuse them from another, the section of the statute above referred to at all times operating to make such instruments, when recorded, constructive notice to all persons concerned.

Section 10599 was enacted subsequent to Rem. Rev. Stat., §§ 10550, 10551, quoted in the majority opinion, and it seems to me the section last enacted enlarges the scope of the prior statute. Certainly the enactment of § 10599 was a vain and useless gesture if county auditors may refuse to accept for record such instruments as are referred to in that section.

Section 10599 is a curative statute, designed to operate both retrospectively and prospectively, and is based upon the assumption that legal documents purporting to affect the title to real estate, but irregularly executed, will be recorded.

The duties of a recording officer are generally ministerial in their nature. Throop on Public Officers, p. 705, § 742. In so far as his duties are ministerial, an auditor has no

authority to use judicial or other discretion in passing upon the validity of any instrument tendered to him for record.

In the case of *Bliss v. Tidrick*, 25 S. D. 533, 127 N. W. 852, the supreme court of South Dakota said:

"Upon the trial of this cause the respondent offered in evidence the record of the above purported administratrix's deed for the purpose of proving such deed. The appellant objected to its receipt in evidence upon the ground that such deed was absolutely void upon its face, that, therefore, it was not entitled to record, and, not being entitled to record, the record thereof was not competent evidence to prove the deed. This objection was overruled, and the record received in evidence. We think the ruling of the court was correct. Appellant cites in support of his position the case of *Stone v. French*, 37 Kan. 145, 14 Pac. 530, 1 Am. St. Rep. 237; and, while there are some statements by way of obiter contained in the opinion which taken by themselves would seem to sustain appellant's position, yet a reading of such opinion shows clearly that all the court held therein was that the recording of a void instrument could give to it no validity, and therefore innocent purchasers relying upon the record of same could acquire no rights under the recording acts. It did not hold that the record of such instrument could not be received in evidence. Conceding that this instrument was void on its face, it would stand before us the same as any other deed clearly void upon its face, and this court has frequently held, and it has become the established law of this state, that a deed void on its face is yet color of title sufficient for the purpose of founding a claim by adverse possession. . . . It necessarily follows, we think, that such a deed is entitled to record."

The recording of an instrument which constitutes color of title may be important under the statutes of this state in certain cases.

The county auditor is not concerned with the validity or invalidity of a deed or an instrument of similar tenor tendered to him for record. The validity of any such instrument may be decided at any time in a proper action by any interested party.

In the case of *Bernard v. Benson*, 58 Wash. 191, 108 Pac. 439, it was held that the record of an executory contract for

the sale of real estate constituted constructive notice of the contents of the contract, under the recording acts, although the statute did not specifically provide for the recording of such instruments. In the course of the opinion, the court said:

"Section 8784 [Rem. & Bal. Code] provides that, 'every instrument in writing purporting to convey or encumber real property,' which has been recorded in the proper office, shall import notice to third parties. It is true, contracts for the sale of real estate are not expressly mentioned in the recording statutes, but we think they are included within the meaning of the words, 'deeds, grants and transfers of real property.' They are within the spirit of the statute, liberally interpreted. 2 Am. & Eng. Ency. Law (2d ed.), § 78. In construing a statute, all acts *in pari materia* will be read together, and where the meaning of a statute is not clear or it is ambiguous, obscure, or indefinite in any respect, contemporaneous construction may also be resorted to in arriving at the intention of the law makers. We think we may properly take judicial notice of the fact that it has been the custom in this state to record such instruments. The construction contended for by the respondents would be productive of great mischief."

This court may take judicial notice of the fact that for many years it has been the custom in this state to file for record affidavits concerning titles to real estate. Such affidavits have been filed by the thousand, and fill a useful purpose in conveying information as to the identity of prior owners of real estate, their status as to whether married or not married, and, if married, to whom. We are not concerned with any question concerning the legal effect of such affidavits when recorded, but, if brought to the attention of any person, they may constitute actual notice of some statement which might be matter of importance. It would seem probable that, if the appellants here had embodied in an affidavit a copy or the substance of the instrument which they sought to file for record, the auditor would have accepted and recorded the affidavit, while refusing to accept for record the instrument itself.

In the case of *Rehm v. Reilly*, 161 Wash. 418, 297 Pac. 147, 74 A. L. R. 350, this court held that the recording by

the county auditor of a copy of a deed was unauthorized and did not impart constructive notice of the deed. The opinion clearly and correctly stated the law. It is interesting to note that by way of *dicta*, and referring to the recording of the copy of the deed, this court said:

"The county auditor no doubt was quite right in accepting and recording anything which might be handed to him for that purpose. It is not for him to attempt to determine what is recordable and what is not. Our statutes specify what instruments shall be recorded, and when an instrument recordable under the statute is filed for record, it becomes notice as the statute provides; but the recording of anything not specified by the statute is, generally speaking, a mere nullity, and no one is required to take notice of it."

This language, of course, referred to the effect of the recording of a mere purported copy of a deed.

In his argument respondent carefully points out the distinction between the matter of the notice given by the recording of a certain instrument and the right to record the same. Respondent, however, then proceeds to confuse these two matters, and cites authorities in which the effect of a certain instrument was considered, and not the question of the right to have such an instrument recorded.

It is true, as contended by respondent, that the right to record is purely statutory. At common law there was no officer whose duty it was to record instruments. The use of indentures partially compensated for the lack of an office of public record. If it be argued that the right to record, being a statutory right, should be strictly construed, it should be remembered that the strict construction of recording statutes applies to the effect of the record of an instrument, but not to the right to have an instrument recorded.

Respondent cites the case of *Kenyon v. Knipe*, 2 Wash. Terr. 422, 7 Pac. 854, attributing to the court the following: "A deed not duly acknowledged and authenticated is not entitled to be recorded." Examination of the record in the case cited discloses that the above quotation is taken from the argument of counsel and not from the opinion of the court.

The consequences of the result reached by the majority in the case at bar may be far-reaching. At this time millions of Americans are serving abroad in our armed forces, and it may well be frequently necessary for individuals so serving to execute deeds, mortgages, and similar instruments.

Our army is governed by the articles of war, which are, of course, statutes enacted by the Congress. The 114th article of war, 10 U. S. C. A. (Sup.), § 1586, reads as follows:

"Any officer of any component of the Army of the United States on active duty in Federal service commissioned in or assigned or detailed to duty with the Judge Advocate General's Department, any staff judge advocate or acting staff judge advocate, the President of a general or special court-martial, any summary court-martial, the trial judge advocate or any assistant trial judge advocate of a general or special court-martial, the president or the recorder of a court of inquiry or of a military board, any officer designated to take a deposition, any officer detailed to conduct an investigation, and the adjutant, assistant adjutant or personnel adjutant of any command shall have power to administer oaths for the purposes of the administration of military justice and for other purposes of military administration; and shall also have the general powers of a notary public in the administration of oaths, the execution and acknowledgment of legal instruments, the attestation of documents and all other forms of notarial acts to be executed by persons subject to military law: *Provided,* That no fee of any character shall be paid to any officer mentioned in this section for the performance of any notarial act herein authorized."

A comparable provision is found in the navy articles, which govern the navy. 34 U. S. C. A., § 217; 34 U. S. C. A. (Sup.), §§ 217a, 217a-1. Congress has enacted these statutory provisions for the benefit and protection of the members of our armed forces. Such an individual on duty with the army serving in a foreign country, or if in the navy upon a warship at sea, will generally be unable to acknowledge formally a deed or other instrument affecting real estate before a person authorized to take such acknowledgments other than an officer given such authority by the articles of war or navy articles. Such an officer, of course,

has no official seal, and all he can do is certify, over his signature, with his rank and status, that the individual signed and acknowledged the instrument before him, and certify the facts in the usual form of acknowledgment. In such a case no court can certify that the officer taking and certifying the acknowledgment has authority so to do, as no court would have the information, as required by Rem. Rev. Stat., §§ 10560, 10561 [P. C. § 1908-24].

The majority hold that a county auditor may refuse to accept such an instrument for filing and record, leaving the interested persons without a remedy.

It may be said that an auditor would not so refuse, but that begs the question, as such a matter should not rest upon the discretion or good will of the auditor. It must always be remembered that that officer is not at all concerned with the validity or nonvalidity of any instrument presented to him for record. The legal effect of such an instrument can be decided at any time in a proper proceeding by any interested party. That is no concern of an auditor.

Respondent emphasizes the need for a uniform practice throughout the state in connection with the matter of recording or nonrecording of such instruments. It is apparent, however, that the result sought by respondent will produce not uniformity, but confusion, since the acceptance of irregular instruments for record will be optional with each auditor, and will generally depend upon the attention, or nonattention, or disposition of the particular deputy to whom the instrument happens to be tendered. The practice, then, will vary not only as between counties, but from day to day in each particular county.

The principle adopted by the majority will not necessarily result in keeping invalid instruments off the record, but will undoubtedly result in preventing the record of many valid deeds which actually convey title. A deed which has been fully executed but never delivered may, through mistake, inadvertence, or the illegal act of some person, be recorded, while a deed, the acknowledgment to which is in some manner defective, may, as between the

parties, convey title and still be kept off the record, to the detriment of innocent persons.

The recording of an instrument is a service for which the person asking that service pays; presumably the fee charged for the recording compensates the county for the expense of the operation.

In my opinion, the court should give full force and effect to Rem. Rev. Stat., § 10599, *supra,* there being no statute forbidding the recording of such an instrument as that which is the subject matter of this action, and the section last referred to clearly contemplating that such an instrument not only may be, but as I construe the statute, should be, recorded when that process is requested.

For the reasons stated, I dissent from the conclusion reached by the majority, it being my opinion that the writ should issue.

SIMPSON, C. J., concurs with BEALS, J.

MILLARD, J. (dissenting)—*State ex rel. McCaffrey v. Superior Court,* 20 Wn. (2d) 704, 149 P. (2d) 156; *State ex rel. Boze v. Superior Court,* 15 Wn. (2d) 147, 129 P. (2d) 776; *State ex rel. Huff v. Reeves,* 5 Wn. (2d) 637, 106 P. (2d) 729; and *State ex rel. McAulay v. Reeves,* 196 Wash. 1, 81 P. (2d) 860, are overruled *sub silentio* by the majority opinion which, as aptly observed by Mr. Justice Roberts in his dissenting opinion in *Smith v. Allwright,* 321 U. S. 649, which overruled *Grovey v. Townsend,* 295 U. S. 45, 79 L. Ed. 1292, 55 S. Ct. 622,

" . . . tends to bring adjudications of this tribunal into the same class as a restricted railroad ticket, good for this day and train only. I have no assurance, in view of current decisions, that the opinion announced today may not shortly be repudiated and overruled by justices who deem they have new light on the subject. . . .

" . . . It is regrettable that in an era marked by doubt and confusion, an era whose greatest need is steadfastness of thought and purpose, this court . . . should . . . become the breeder of fresh doubt and confusion in the public mind as to the stability of our institutions."

Let us have a government of laws and not of men.

I concur in the dissenting opinion of BEALS, J.